STEVENS & LEE, P.C.
485 Madison Avenue, 20th Floor
New York, New York 10022
Telephone:  212-319-8500
Facsimile:  212-319-8505
Nicholas F. Kajon
Constantine D. Pourakis
Andreas D. Milliaressis

*Counsel for the Petitioners Rachelle Frisby and John Johnston,*
*in their capacity as the Joint Provisional Liquidators*
*and Foreign Representatives*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | ) | Chapter 15 |
| | ) | |
| PB INVESTMENT HOLDINGS LTD.,[1] | ) | Case No. 21-10623 (LGB) ) |
| | ) | |
| Debtor in Foreign Proceeding. | ) | |
| | ) | |

**VERIFIED PETITION OF PB INVESTMENT HOLDINGS LTD.**
**(IN PROVISIONAL LIQUIDATION) AND MOTION OF THE**
**JOINT PROVISIONAL LIQUIDATORS FOR (A) RECOGNITION OF THE BERMUDA**
**PROCEEDING AS A FOREIGN MAIN PROCEEDING OR, IN THE ALTERNATIVE,**
**AS A FOREIGN NONMAIN PROCEEDING AND (B) CERTAIN RELATED RELIEF**

Rachelle Frisby and John Johnston of Deloitte Ltd. ("Deloitte"), in their capacities as the

joint provisional liquidators and authorized foreign representatives ("Petitioners" or "JPLs") for

PB Investment Holdings Ltd. ("Debtor" or "PBIHL"), in provisional liquidation currently

pending before the Supreme Court of Bermuda (the "Bermuda Court"), Companies (Winding

Up) Commercial Court, 2020: No. 441 (the "Bermuda Proceeding"), by and through the

undersigned counsel to the JPLs on behalf of the Debtor, hereby submit this *Verified Petition of*

---

[1] PBIHL (defined herein), a foreign Debtor, is a Bermuda limited company with a registered address in Bermuda of 22 Victoria Street, Hamilton, HM 12, Bermuda.

*PB Investment Holdings Ltd. (in Provisional Liquidation) and Motion of the Joint Provisional Liquidators for (A) Recognition of the Bermuda Proceeding as a Foreign Main Proceeding or, in the Alternative, as a Foreign Nonmain Proceeding, and (B) Certain Related Relief* in furtherance of the Debtor's Form of Voluntary Petition [ECF No. 1] filed concurrently herewith (together with Debtor's Form of Voluntary Petition, the "Verified Petition") pursuant to sections 105, 1515-1517 and 1519-1522 of title 11 of the United States Code (the "Bankruptcy Code") for (i) entry of an order, substantially in the form attached hereto as <u>Exhibit A</u> (the "Recognition Order") after notice and a hearing (the "Recognition Hearing"), granting recognition of the Bermuda Proceeding as a foreign main proceeding or, in the alternative, as a foreign nonmain proceeding, and certain related relief.

The Petitioners respectfully refer the Court to the *Memorandum of Law in Support of the Verified Petition* (the "Memorandum of Law") [ECF No. 3], and the *Declaration of Rachelle Frisby Pursuant to 28 U.S.C. § 1746 and Statements and Lists Required by Bankruptcy Rule 1007(a)(4)* (the "Frisby Declaration") [ECF No. 4], each of which is incorporated herein by reference.  In further support, the Petitioners respectfully represent as follows:

## <u>STATUS OF THE CASE AND JURISDICTION</u>

1.  On December 3, 2020, the JPLs of Northstar (defined below) presented a petition to the Bermuda Court to, *inter alia,* wind up the Debtor and to appoint Rachelle Frisby and John Johnston of Deloitte as provisional liquidators of the Debtor.  The Bermuda Court has granted the JPLs' request to appoint provisional liquidators and, by order dated January 8, 2021 (the "Bermuda Order"), Petitioners were appointed as JPLs and duly authorized foreign representatives of the Debtor. [2]

---

[2] A true and correct copy of the Bermuda Order is annexed as Exhibit A to the Frisby Declaration.

04/02/2021 SL1 1679426v2 115179.00001

2.   On September 25, 2020, the Bermuda Court previously appointed the Petitioners as JPLs and duly authorized foreign representatives over three related entities, Northstar Financial Services (Bermuda) Ltd. ("Northstar"), Omnia Ltd. ("Omnia") and PB Life and Annuity Co., Ltd. ("PBLA", together with Northstar and Omnia, the "Related Debtors") for which the Petitioners sought chapter 15 relief, granted by this Court on January 5, 2021. As set forth in greater detail below, the JPLs need relief from this Court, *inter alia*, to (1) assist in the administration of hundreds of millions of dollars of assets of the Related Debtors and tens of millions of dollars of assets of PBIHL that the former principal of all four companies caused to be channeled into illiquid investments issued by his affiliates as well as other United States-based companies, and (2) obtain a stay of multiple litigations that would otherwise deplete scarce resources to the detriment of policyholders and other creditors of the Related Debtors.  The Debtor has assets located in the United States.

3.   The Bermuda Order has granted the JPLs the broad authority to undertake various actions with respect to the Debtor, including the authority:

4.1 To continue the business of the [Debtor] under the supervision of [the Bermuda Court] so far as is necessary to preserve the value of the [Debtor];

4.2 To review, secure, take possession of and [sic] the books, papers, records, bank accounts and any other property or assets (of whatever nature) to which the [Debtor] is or appears to be entitled, and to take whatever steps necessary to effect such possession including, where necessary, Court actions to obtain such property or assets to bring them under the control of the JPLs. For the avoidance of doubt, this includes the power for the JPLs to be able to see, review, secure, take possession of and copy any books and records (of whatever nature) relating to the [Debtor's] management, accounts and audit located in the offices of the [Debtor's] Managers, Principal Representative and/or auditors and accountant both in [Bermuda] and in any other jurisdiction;

4.3 To retain and employ barristers, attorneys and/or such agents or professional persons as the JPLs deem fit (in Bermuda, the United States, and elsewhere as the JPLs deem appropriate) for the purpose of advising and assisting in the execution of their powers;

3

4.4. To render and pay invoices out of the assets of the [Debtor] for their own remuneration at their usual and customary rates (and this shall include all costs, charges and expenses of their attorneys and all other agents, managers, accountants or other persons that the JPLs may employ); and all expenses and disbursements in connection with the running, administration and management of the [Debtor's] records and affairs and offices;

4.5 If deemed necessary and/or appropriate to seek the assistance of the courts in the United States or elsewhere as deemed necessary and appropriate to secure the assets of the [Debtor] in that jurisdiction, including, without limiting the foregoing, the assistance of the United States Bankruptcy Court under the provisions of the US Bankruptcy Code, Chapter 15;

4.6 To take control of and operate the existing bank accounts of the [Debtor] in Bermuda, the United States, or elsewhere, and no other person or entity shall have any authority, power or control over any of the [Debtor's] accounts, including without limitation the [Debtor's] officers, directors, shareholders, affiliates or agents; and to open and operate any bank accounts in the name of the JPLs or the [Debtor] as may be necessary; which powers, for the avoidance of doubt, shall include the ability to amend the list of authorized signatories for the operation of any such bank accounts;

4.7 To do all such things as may be necessary or expedient for the protection of the [Debtor's] property or assets, including but not limited to selling or otherwise disposing of the property of the [Debtor] by any means appropriate;

4.8 To conduct such investigations and obtain such information so far as it is necessary to locate, protect, secure, take possession of, collect and get in the assets, and determine the liabilities, of the [Debtor], including but not limited to securing the shares in and controlling the subsidiaries of the [Debtor];

4.9 To investigate the assets and affairs of the [Debtor] and the circumstances which gave rise to its insolvency, including, without limitation, to require the [Debtor] to make a forensic image of the [Debtor's] and its subsidiaries' management information systems including records stores [sic] on their computers. Such forensic image is to be stored on behalf of the [Debtor] and appropriately safeguarded to protect the integrity of the data (including all metadata) and shall only be accessed with the written consent of the JPLs or as directed by [the Bermuda Court]. For the avoidance of doubt, the books, records and documents of the [Debtor] include:

   4.9.1 Emails exchanged and other correspondence between the [Debtor] and its auditors, and the [Debtor] and other third parties; and

   4.9.2.   Documents and information provided by the [Debtor] to its auditors and provided by the auditors to the [Debtor] in relation to the audit work;

4

. . .

4.12. To carry out the following where deemed appropriate:

    4.12.1. The payment of payroll, payroll taxes, employment benefits and expenses;

    4.12.2. The employment of professionals used in the ordinary course of business;

    4.12.3. The incurrence of indebtedness or borrowed money, whether pursuant to agreements with suppliers or pursuant to loan arrangements with financing institutions and/or to grant security in respect of same and/or to guarantee such indebtedness or borrowed money of affiliates;

    4.12.4. The sale or other disposition of any business operation, subsidiary, division or other significant asset of the [Debtor];

    4.12.5. The transfer, novation or commutation of any contracts of insurance or reinsurance to which the [Debtor] is party;

4.13. To enter into settlements or arrangements with any creditors and any debtors of the [Debtor] without further order or other approval or formality, including but not limited to, terminating, completing or effecting any contracts or transactions relating to the business of the [Debtor];

. . .

4.15. To consider any legal or arbitration proceedings (including winding up proceedings) wherever situate in which the [Debtor] is a party; and to give all instructions in connection therewith and take such action as may be thought necessary to continue to prosecute or defend such proceedings or to apply for a stay of such proceedings;

4.16 To consider and if thought advisable to commence such actions as may be necessary in Bermuda or elsewhere to protect, recover or obtain assets or money belonging to the [Debtor];

. . .

Bermuda Order, ¶¶ 4.1-4.9, 4.12, 4.13, 4.15 and 4.16.

    4.  On the date hereof (the "Petition Date"), the JPLs commenced the case (the "Chapter 15

Case") by filing the Verified Petition for relief under chapter 15 of the Bankruptcy Code.  The

JPLs seek recognition of the Bermuda Proceeding as a foreign main proceeding or, in the

alternative, as a foreign nonmain proceeding under section 1517 of the Bankruptcy Code. The Debtor is an affiliate of the Related Debtors.

5.   Additional information regarding the Debtor and the JPLs, and additional information relevant to the Chapter 15 Case and the Verified Petition, is set forth in the Memorandum of Law and the Frisby Declaration.

6.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, sections 109 and 1501 of the Bankruptcy Code and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, dated as of January 31, 2012, Reference M-431, *In re Standing Order of Reference Re:  Title 11*, 12 Misc. 00032 (S.D.N.Y. Feb. 2, 2012) (Preska, C.J.).

7.   The Chapter 15 Case has been properly commenced pursuant to section 1504 of the Bankruptcy Code by the filing of the Verified Petition under section 1515 of the Bankruptcy Code.  Recognition of a foreign proceeding and other matters under chapter 15 of the Bankruptcy Code have been designated core matters under 28 U.S.C. § 157(b)(2)(P).

8.   Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1410.

9.   The statutory predicates for the relief requested herein are sections 105, 362, 1519, and 1521 of the Bankruptcy Code.

## **BACKGROUND OF THE DEBTOR**

10.   Debtor was incorporated on November 28, 2014 as an exempted company pursuant to the Bermuda Companies Act 1981 with registration number 49773.  The Debtor was formerly known as Beechwood Bermuda Investment Holdings Ltd ("Beechwood") and changed its name to PB Investment Holdings Ltd.

04/02/2021 SL1 1679426v2 115179.00001

11.    PBIHL provides wealth management services to financial institutions and high net worth individuals offering a range of investment plans.  PBIHL has not received a license from the Bermuda Monetary Authority to operate such activities.

12.    PBIHL and Northstar Financial Services (Bermuda) Ltd. ("Northstar") are both wholly owned subsidiaries of BMX Bermuda Holdings Ltd., which is wholly owned by BMX Holdings LLC with the ultimate beneficial owner being Mr. Greg E. Lindberg ("Mr. Lindberg").

13.    Following the appointment of the JPLs for Northstar and in the course of administering the provisional liquidation of Northstar and reviewing its financial records, the JPLs became aware that Northstar had been paying PBIHL's day-to-day expenses and operating costs since on or about November 30, 2018.  Northstar's payment of PBIHL's day-to-day expenses and operating costs was made pursuant to a loan agreement between the two entities (the "Loan Agreement").[3]  The Chief Compliance Officer of Northstar confirmed that the arrangement was for all invoices to be sent to Northstar to track Bermuda related payments and the intercompany balance was to be repaid to Northstar by PBIHL.

14.    On October 19, 2020, the JPLs acting on behalf of Northstar, through their Bermuda Counsel, Marshall Diel & Myers Limited ("MDM"), served PBIHL a statutory demand pursuant to Section 162(a) of the Bermuda Companies Act 1981.  The statutory demand required PBIHL to pay the sum of BD$357,494.38 within twenty-one (21) days of the date of the service (the "Statutory Demand") and specified that the sum of BD$357,494.38 was due and owing pursuant to the Loan Agreement for the period up to and including December 31, 2019 (the "2019 Loan Amount").  The Statutory Demand was clear that this sum did not include any monies due and

---

[3] The JPLs do not believe that there is a formal document evidencing the Loan Agreement.

owing to Northstar for the period January 1, 2020 to present and, accordingly, the total amount
due and owing to Northstar may in fact be greater.

15.   After the issuance of the Statutory Demand, following further review by the JPLs and
their colleagues at Deloitte, the JPLs became aware of additional loans made by Northstar to
PBIHL in 2020 pursuant to the Loan Agreement.  Specifically, for the period January 2020 to
September 2020, Northstar made additional payments on PBIHL's behalf in the total sum of
BD$7,194.57

16.   Accordingly, the total known sum due and owing by PBIHL to Northstar is
BD$364,688.95, subject to further investigation by the JPLs.

17.   There are a number of transactions that relate to an entity known as Private Bankers
Investment Company ("PBIC") paid by Northstar and allocated to PBIHL.  The JPLs understand
that PBIC was a related company that was not fully operational and certain sunk costs were
absorbed by Northstar.  These expenses were later apportioned between PBIHL, Omnia and
Northstar based on the assets under management of the respective entities, with PBIHL's share
of the PBIC expenses totaling $33,833.98.

18.   The twenty-one day period for PBIHL to pay the 2019 Loan Amount to Northstar
pursuant to the Statutory Demand expired on November 9, 2020 and to date there has been no
formal response by PBIHL (or any other person) to the Statutory Demand and no payments have
been made by PBIHL (or by any other person) in respect of any of these debts owed by PBIHL
to Northstar in response to the Statutory Demand or otherwise.

19.   In light of these circumstances, the JPLs believe PBIHL is unable to pay its debts as they
fall due and consequently sought entry of the Bermuda Order.

8

20.  Mr. Lindberg is the ultimate beneficial owner of four related entities: (i) the Debtor; (ii) Northstar; (iii) Omnia ; and (iv) PBLA.[4]

21.  PBIHL, PBLA and Omnia were acquired by Mr. Lindberg in 2017 and Northstar in 2018.

22.  PBLA's principal assets are located in this District. These assets consist of hundreds of millions of dollars in investments held in two trust accounts at The Bank of New York Mellon. Debtor is an affiliate of PBLA through their common owner, Mr. Lindberg, and, pursuant to 28 U.S.C. §1408(2) and 1410(3), venue is proper in this District.

23.  PBLA and Omnia are both owned 100% by PBX Bermuda Holdings, Ltd.  PBX Bermuda Holdings, Ltd. is in turn owned 100% by PBX Holdings, LLC. Mr. Lindberg holds a 100% ownership interest in PBX Holdings, LLC.

24.  Ultimately, Mr. Lindberg owns and controls PBLA, Omnia, Northstar and Debtor, so that the Companies are affiliates as defined under section 101(2) of the Bankruptcy Code. Debtor files this Chapter 15 petition in this District as related to PBLA pursuant to 28 U.S.C. §§ 1408(2) and 1410(3).

25.  On or about October 3, 2018, the Bermuda Monetary Authority was notified that the United States Department of Justice had launched an investigation into Mr. Lindberg.  On March 18, 2019, Mr. Lindberg was indicted on charges of attempting to bribe the North Carolina Department of Insurance Commissioner.

26.  Mr. Lindberg was tried in February 2020 and on March 5, 2020, a federal jury convicted Mr. Lindberg of conspiracy to commit honest services wire fraud and bribery concerning programs receiving federal funds.

---

[4] Omnia, Northstar and PBLA filed petitions under Chapter 15 of the Bankruptcy Code and their cases are being jointly administered under *In re PB Life and Annuity Co., Ltd.*, Case No. 20-12791 (Bankr. SDNY).

27.  Northstar and now PBIHL have had non-compliance and liquidity issues.  Shortly after the change of control of Northstar to Mr. Lindberg, there was a reallocation of assets of the Northstar, Omnia and PBLA, with significant assets being invested in equity and debt instruments, mainly in special purpose vehicle structures, under the control of Mr. Lindberg in the United States, which now appear to be illiquid.  The JPLs require relief from this Court to assist in maximizing the value of these illiquid assets of the Debtor through its loans to Northstar, and, by the already filed Chapter 15 Petitions of Northstar, Omnia and PBLA, the assets of Northstar, Omnia and PBLA, most of which are invested in multiple companies organized under the laws of the United States, including over $500 million invested in Lindberg affiliates.

28.  There are also two substantial pending litigations involving PBLA, which, upon information and belief, may impact the assets of Debtor: (i) the SDNY Action and ULICO Appeal (both defined below), and (ii) a North Carolina State Court civil action entitled Southland National Insurance Corporation in Rehabilitation, Bankers Life Insurance Company, in Rehabilitation, Colorado Bankers Life Insurance Company, in Rehabilitation, and Southland National Reinsurance Corporation, in Rehabilitation v. Greg E. Lindberg, Academy Association, Inc., Edwards Mill Asset Management, LLC, and Private Bankers Life and Annuity Co., Ltd. a/k/a PB Life and Annuity Company, Ltd., *Gen. Court of Justice, Superior Court Division (Wake County), No. 19 CVS 013093* (the "NC Insurance Rehabilitation Action").  These matters are stayed as against the Companies in light of the already filed and jointly administered Chapter 15 cases for PBLA, Northstar and Omnia.

29.  PBLA and Universal Life Insurance Company ("ULICO") executed a Coinsurance Reinsurance Agreement on or about June 30, 2017 (the "Co-Re Agreement").  PBLA through the

04/02/2021 SL1 1679426v2 115179.00001

Co-Re Agreement agreed to reinsure liabilities with respect to certain insurance policies issued

by ULICO in accordance with the terms of the Co-Re Agreement.  The Co-Re Agreement also

required that its parties enter into a Reinsurance Trust Agreement (the "RT Agreement") for the

establishment of a Reinsurance Trust Account, which pursuant to the Co-Re Agreement must

include additional specific terms relating to financial reserves and the Insurance Code of Puerto

Rico.  The parties executed a RT Agreement.  The Co-Re Agreement includes an agreement to

present and resolve disputes between its parties in arbitration; the RT Agreement contains no

such agreement.  ULICO by writing dated January 27, 2020 demanded arbitration, claiming

among other things that PBLA contributed non-compliant and insufficient assets in its

performance of the RT Agreement.

    30.  PBLA denied ULICO's claims, PBLA denied that the arbitration agreement in the Co-Re

Agreement applied, and a judicial proceeding was initiated in the United States District Court for

the Southern District of New York captioned <u>PB Life and Annuity Co. Ltd. f/k/a Private Bankers</u>

<u>Life and Annuity Co., Ltd. v. Universal Life Insurance Company</u>, *No. 1:20-cv-02284-LJL* (the

"SDNY Action").  The Court in the SDNY Action compelled the parties to present and resolve

their disputes pursuant to the arbitration agreement in the Co-Re Agreement.  *See* SDNY Action,

Opinion & Order dated May 12, 2020, Docket No. 33.  An arbitration panel was constituted,

hearings were held, and attorneys for the parties made oral and written submissions to a panel of

arbitrators selected and constituted pursuant to the arbitration agreement.  The arbitration panel

by written award dated June 2, 2020 determined, *inter alia*, that PBLA was required to pay into a

segregated bank account identified by ULICO and defined otherwise in the award

$524,009,051.26 within ten (10) days, after which interest shall run at six (6) percent per annum.

The arbitration remains open, including pursuant to the applicable rules and the award dated June

11

2. ULICO moved in the SDNY Action to confirm the award and reduce it to a monetary judgment, PBLA sought to vacate the award and otherwise opposed ULICO's attempt, the Court confirmed the arbitration award, and judgment issued. *See* SDNY Action, Opinion & Order dated July 30, 2020, Docket No. 47 (confirming award, denying PBLA cross-motion); Final Judgment dated August 11, 2020, Docket No. 52. PBLA timely filed a Notice of Appeal as to the Opinions & Orders in the SDNY Action dated May 12 and July 30, 2020. *See, e.g.,* SDNY Action, Notice of Appeal dated September 8, 2020, Docket No. 54. The appeal is pending with the United States Court of Appeals, Second Circuit (the "ULICO Appeal").

31. PBLA is named as one of five (5) defendants in the NC Insurance Rehabilitation Action. The operative amended complaint is dated October 19, 2019, and subject to a sealing order dated January 10, 2020 that redacts portions of it. Each plaintiff in the NC Insurance Rehabilitation Action is an insurance or reinsurance company licensed in North Carolina; affiliated with the Lindberg Entities; and subject to an Order of Rehabilitation (the "Rehabilitation Order") entered pursuant to North Carolina law by the same Court where the NC Insurance Rehabilitation Action is pending on June 27, 2019. As one consequence of the Rehabilitation Order the defendants named in the NC Insurance Rehabilitation Action – including PBLA before liquidation proceedings commenced – entered into written agreements with the North Carolina Commissioner of Insurance. Those agreements sought to effectuate through a series of agreed steps and transactions actions by and on behalf of defendants deemed necessary by the Commissioner to remediate specific operating concerns affecting plaintiffs. Plaintiffs in the NC Insurance Rehabilitation Action, beneficiaries of those agreements, among their claims allege that defendants failed to perform them, that defendants never intended to do so, and seek relief among their claims for specific performance of the agreements entered into as a consequence of

the Rehabilitation Order, unspecified money damages, punitive damages for civil fraud, a permanent injunction including through it the compelled implementation of the terms of the written agreements, any recoverable attorneys' fees and costs of prosecution, and additional unspecified equitable relief. PBLA was granted Chapter 15 recognition to ensure that these assets are not used in a proceeding outside of the matters pending before the Bermuda Court.

32.   On October 19, 2020, the JPLs received a notice directed to Northstar from SunTrust Investment Services, Inc. ("SunTrust") advising that SunTrust is subject to a FINRA arbitration action styled *Gustavo Ortega Trujillo and Priscilla Illingworth Ashton v. SunTrust Investment Services, Inc.,* FINRA DR Arbitration No.20-02941 (the "SunTrust Arbitration"). SunTrust alleges that the claimants are seeking to hold SunTrust liable for Debtor's failure to return claimants' principal and accumulated interest upon maturity of their Northstar Global Advantage Select Contract No. GS100160. The notice further advises that SunTrust will seek full indemnification from Northstar for any and all losses, claims, damages, liabilities, or expenses to which SunTrust may become subject in or as a result of the SunTrust Arbitration.

33.   Northstar is also subject to litigation pending in the Superior Court for the State of California, County of San Diego styled as *Oscar Manguy and Karla Meza v. Northstar Financial Services, Ltd.*, Case No. 37-2020-00016618-CU-CO-CTL for failure to return funds held in certificates of deposit on behalf of two individual investors (the "California Action").

34.   There is also an action pending in the Middle District of North Carolina brought by ULICO against Mr. Lindberg, individually. The stay of creditor actions to be sought in this case in no way stays this action, styled *Universal Life Insurance Company v. Greg E. Lindberg*, Case No. 1:20-cv-00681 (M.D.N.C.).

13

35.  The Debtor was a defendant in an action styled as *Melanie Cyganowski, as Receiver for Platinum Partners Credit Opportunities Master Fund LP, et al. v. Beechwood Re Ltd.*, No. 18-cv-12018-JSR (S.D.N.Y.), which was thereafter consolidated with two other actions under the caption *In re Platinum-Beechwood Litigation*, No. 18-cv-6658-JSR (S.D.N.Y.).  On April 15, 2020, the District Court entered a Decision and Order granting the Debtor summary judgment and dismissing each of these actions.  Plaintiff filed Notices of Appeal with the Second Circuit Court of Appeals, and assigned index numbers 20-3048 and 20-3100.  The parties have reached an agreement to settle this litigation, subject to documentation and approval by the Bermuda Court, and the Appellant has withdrawn with prejudice both appeals.

36.  The stay of creditor actions to be sought in this case would only apply to the Debtor and in no way would stay creditor actions against BMX Holdings, LLC, BMX Bermuda Holdings, Ltd., Mr. Lindberg, Global Growth or any non-debtor entity potentially affiliated with the Debtor.

37.  The JPLs believe the Debtor is cashflow insolvent and believe in all likelihood the Debtor is balance sheet insolvent.

38.  As stated, *supra*, on March 18, 2019, Mr. Lindberg was indicted on charges of attempting to bribe the North Carolina Department of Insurance Commissioner. Mr. Lindberg was tried in February 2020 and on March 5, 2020, a federal jury convicted Mr. Lindberg of conspiracy to commit honest services wire fraud and bribery concerning programs receiving federal funds and he was later sentenced to serve over seven years in prison.  Mr. Lindberg was incarcerated on October 20, 2020.

39.  In an official release following Mr. Lindberg's indictment, Assistant Attorney General Benczkowski commented that "[t]he indictment unsealed today outlines a brazen bribery scheme

14

in which Greg E. Lindberg and his coconspirators allegedly offered hundreds of thousands of dollars in campaign contributions in exchange for official action that would benefit Lindberg's business interests. . . Bribery of public officials at any level of government undermines confidence in our political system.  The Criminal Division will use all the tools at our disposal— including the assistance of law-abiding public officials—to relentlessly investigate and prosecute corruption wherever we find it." *See* Department of Justice Office of Public Affairs release.[5]

40.  On April 15, 2019, due to the complications arising out of Mr. Lindberg's indictment, the Bermuda Monetary Authority imposed significant conditions on the insurance license of each of Northstar, Omnia and PBLA to assist in the enhanced supervision by the Bermuda Monetary Authority.  The conditions require that Northstar, Omnia and PBLA seek the written approval of the Bermuda Monetary Authority before engaging in certain actions.

41.  In March 2020, following the conviction of Mr. Lindberg, the Bermuda Monetary Authority received an increasing number of complaints from Northstar's policyholders regarding unpaid surrender requests and were advised of a legal action commenced against PBLA in the United States.  The Bermuda Monetary Authority was increasingly concerned about the solvency of Northstar, Omnia and PBLA.  In May 2020, the Bermuda Monetary Authority appointed Deloitte as an independent party to conduct a review of the files held by the Bermuda Monetary Authority in relation to each of the Companies' non-compliance and solvency issues and to report to the Bermuda Monetary Authority on the nature and state of the financial position of the Companies.

---

[5] https://www.justice.gov/opa/pr/founder-and-chairman-multinational-investment-company-company-consultant-and-two-north

42.  Deloitte provided its report, detailing the probable solvency issues of Northstar, Omnia and PBLA and, on September 18, 2020, the Bermuda Monetary Authority filed a Petition on behalf of the Debtors seeking, among other things, the winding up of the Debtor and appointment of the JPLs.

43.  Upon further investigation as outlined, *supra*, the JPLs of Northstar filed an application to be appointed as the JPLs of PBIHL on December 3, 2020, which application was granted on January 8, 2021.

## RELIEF REQUESTED

44.  By this Verified Petition, the JPLs seek entry of an order granting ancillary relief in order to effectuate the restructuring of the Debtor.  The JPLs seek recognition of the Bermuda Proceeding in the United States, specifically:

(a) entry of the Recognition Order after notice and a hearing:[6]

(i)  granting recognition of the Bermuda Proceeding as a foreign main proceeding pursuant to section 1517(b)(1) of the Bankruptcy Code and granting related relief or, in the alternative, granting recognition of the Bermuda Proceeding as a foreign nonmain proceeding pursuant to section 1517(b)(2) of the Bankruptcy Code and granting related relief;

(ii)  granting relief as of right upon recognition of the Bermuda Proceeding as a foreign main proceeding pursuant to section 1520 of the Bankruptcy Code if the Bermuda Proceeding is recognized as a foreign main proceeding;

---

[6] The Petitioners have requested a date and time for the Recognition Hearing to consider entry of the Recognition Order pursuant to the *Application by Joint Provisional Liquidators Rachelle Frisby and John Johnston for Order (I) Scheduling Hearing on Verified Petition of PB Investment Holdings Ltd. (in Provisional Liquidation) and Motion for Recognition and Related Relief and (II) Specifying Form and Manner of Service of Notice* (the "Notice Motion") [ECF No. 2], filed contemporaneously herewith.

04/02/2021 SL1 1679426v2 115179.00001

        (iii)  whether the Bermuda Proceeding is recognized as a foreign main proceeding or foreign nonmain proceeding, granting additional relief under section 1521 of the Bankruptcy Code including:

                (a)  staying the commencement or continuation of any actions or proceedings concerning the Debtor's assets, rights, obligations or liabilities;

                (b)  staying execution against the Debtor's assets;

                (c)  suspending the right to transfer, encumber or otherwise dispose of the Debtor's assets; and

                (iv)  granting such further relief as the Court deems just and proper.

        (b)Entry of an Order for Turnover of the following assets:

            (i)  Any and all loans, debt instruments, preferred equity, and ordinary equity invested in privately held, special purpose vehicles ("SPVs") and other related companies located in the United States.

### **BASIS FOR RELIEF REQUESTED**

45.  For the reasons set forth in the Memorandum of Law, the JPLs request that the Court enter the Recognition Order.  The JPLs meet the standards for obtaining the relief requested herein and otherwise satisfy the statutory requirements for recognition and related relief under chapter 15 of the Bankruptcy Code.

46.  The Bankruptcy Code authorizes the Court to enter a final order, after notice and a hearing, recognizing a foreign proceeding if (i) such proceeding is a foreign main proceeding or a foreign nonmain proceeding, (ii) the foreign representative applying for recognition is a person or body and (iii) the application for recognition was properly filed in accordance with section 1515 of the Bankruptcy Code.  11 U.S.C. § 1517(a).  The Bankruptcy Code further

17

provides that a proceeding shall be recognized as a foreign main proceeding if it is pending in the country where the debtor has the center of its main interests ("COMI").  11 U.S.C. § 1517(b).

47.  For the reasons discussed in the Memorandum of Law, entry of the Recognition Order is warranted because: (i) the JPLs are foreign representatives and (ii) the Verified Petition satisfies all of the statutory requirements for recognition and related relief under chapter 15 of the Bankruptcy Code as a foreign main proceeding.[7]

48.  First, the Debtor satisfies section 109(a) of the Bankruptcy Code, which is a precondition for chapter 15 eligibility.  As explained in the Memorandum of Law, a debtor need only have minimal "property" in the United States in order to comply with the terms of section 109(a).  The Debtor easily satisfies this requirement given the parent company of the Debtor's parent company, BMX Holdings, LLC, is a North Carolina limited liability company, and the Debtor holds loans, debt instruments and preferred equity, invested in privately held, special purpose vehicles ("SPVs") and other related companies located in the United States.

49.  Second, the Chapter 15 Case was duly and properly commenced as required by sections 1504 and 1509(a) of the Bankruptcy Code by filing the Verified Petition and all other required documents in accordance with section 1515 of the Bankruptcy Code.

50.  Third, as described in the Frisby Declaration and the Memorandum of Law, the JPLs qualify as a person or body, and each is a foreign representative within the meaning of section 101(24) of the Bankruptcy Code, *i.e.*, the JPLs are authorized in the Bermuda Proceeding to administer the Debtor's assets and affairs as determined by the Bermuda Court.  *See* Frisby Declaration ¶¶ 43-46.

---

[7] Although the JPLs believe that the Bermuda Proceeding is undoubtedly a foreign main proceeding, the JPLs have requested, in the alternative, that the Bermuda Proceeding be recognized as a foreign nonmain proceeding out of an abundance of caution.

18

51.  Fourth, the Bermuda Proceeding is pending in Bermuda, the Debtor's COMI.  As described in detail in the Memorandum of Law, Bermuda is the main situs of the Debtor's business operations, and this fact is readily apparent to third parties.  The Debtor clearly established Bermuda as its COMI well in advance of the Petition Date by centralizing its operations there.

52.  In the event that the Court concludes that the Debtor's COMI is not Bermuda, the Court should recognize the Bermuda Proceeding as a foreign nonmain proceeding.  A foreign nonmain proceeding takes place in a jurisdiction that is not the entity's center of main interests but where it has an "establishment," defined as "any place of operations where the debtor carries out a nontransitory economic activity."  11 U.S.C. §§ 1502(2), (5).  As of the date of the filing of the Chapter 15 petition the Debtor had a place of business in Bermuda.  Thus, it is evident the Debtor has an establishment in Bermuda.

53.  As described in the Memorandum of Law and above, this Court's recognition of the Bermuda Proceeding as a foreign main proceeding or, in the alternative, as a foreign nonmain proceeding, and granting the relief requested herein pending a hearing on the Recognition Order-in addition to the relief automatically granted upon recognition pursuant to section 1520 of the Bankruptcy Code-is consistent with the purposes of chapter 15 of the Bankruptcy Code and with the public policy of the United States.  Therefore, the JPLs respectfully request that, upon notice and a hearing, the Court grant the Recognition Order and such other and further relief as the Court may deem just and proper.

54.  After their appointment, the JPLs conducted a review of the books and records of Northstar and found that Northstar paid the day to day expenses and operating costs of the

Debtor pursuant to the Loan Agreement and, through Bermuda Counsel, sent a statutory demand letter to PBIHL requiring the repayment of the funds.

55.  As described in the Memorandum of Law, pursuant to section 1521 of the Bankruptcy Code this Court has the discretion to order the turnover of the assets held domestically in the United States to the JPLs.  Therefore, the JPLs respectfully request that, upon recognition, the Court also order the turnover of such assets to the JPLs and provide that the JPLs can administer the assets in accordance with the Bermuda Order, including but not limited to distribution to creditors.

## **NOTICE**

56.  No trustee, examiner or statutory committee has been appointed in the Chapter 15 Case. Notice of this Verified Petition has been provided to: (a) the United States Trustee for the Southern District of New York, (b) Counsel for Plaintiffs in *Southland National Insurance Corporation, et al. v. Greg E. Lindberg, et al.*: Wes J Camden, Esq., Williams Mullen; (c) Counsel to Edward Mill Asset Management, LLC, defendant in the NC Insurance Rehabilitation Action: Everett Gaskins Hancock, LLP, attn.: Michael J. Byrne, Esq., (d) Counsel for Greg E. Lindberg and other Defendants in *Southland National Insurance Corporation, et al. v. Greg E. Lindberg, et al*: Condon Tobin Sladek Thornton PLLC, attn.: Jared Pace, Esq. and Aaron Z. Tobin, Esq. (e) Counsel for Universal Life Insurance Company: Clyde & Co., attn.: Michael A. Knoerzer, Esq. (f) Cervantes Hodges Law Firm, (g) BMX Holdings, LLC, (h) BMX Bermuda Holdings, Ltd., (i) PBX Holdings, LLC, (j) PBX Bermuda Holdings, Ltd. (k) SunTrust Investment Services, Inc.,  (l) Counsel for claimants in *Gustavo Ortega Trujillo and Priscilla Illingworth Ashton v. SunTrust Investment Services, Inc.,* FINRA DR Arbitration No.20-02941, Soreide Law Group PLLC, attn.: Lars Soreide, Esq., (m) counsel for Plaintiff in *In re Platinum-*

20

*Beechwood Litigation*, Otterbourg P.C., attn.: Andrew Seth Halpern, Esq. and Erik Bradley

Weinick, Esq., (n) all other parties that request notice in this case pursuant to Bankruptcy

Rule 2002 prior to the date of such service and (o) all other parties that this Court may direct.

The Petitioners submit that no other or further notice is necessary.

WHEREFORE, the Petitioners respectfully request (i) entry of the Recognition Order,

substantially in the form attached hereto as <u>Exhibit A</u> and (ii) such other and further relief as the

Court deems just and proper.

Dated: April 2, 2021
New York, New York

STEVENS & LEE, P.C.

By: ___/s/ Nicholas F. Kajon_____
Nicholas F. Kajon
Constantine D. Pourakis
Andreas D. Milliaressis
485 Madison Avenue, 20th Floor
New York, New York 10022
Telephone:  212-319-8500
Facsimile:  212-319-8505
nfk@stevenslee.com
cp@stevenslee.com

*Counsel for the Petitioners Rachelle Frisby and*
*John Johnston, in their capacity as*
*Joint Provisional Liquidators and*
*Foreign Representatives*

04/02/2021 SL1 1679426v2 115179.00001

## **VERIFICATION OF PETITION**

Rachelle Frisby, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States of America as follows:

I am a Partner of Deloitte and one of the duly appointed foreign representatives of the Debtor.  As such, I have full authority to verify the foregoing Verified Petition on behalf of the Debtor.

I have read the foregoing Verified Petition, and I am informed and believe that the factual allegations contained therein are true and accurate to the best of my knowledge, information and belief.

Dated:  April 1, 2021
Hamilton, Bermuda

By:  _____

By:  Rachelle Frisby – Joint Provisional
Liquidator
Title:  Partner, Deloitte Ltd.
Authorized Foreign Representative of the
Debtor

22