**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | ) Chapter 15 |
| PB INVESTMENT HOLDINGS LTD.,[1] | ) Case No. 21-10623 (LGB) |
| Debtor in Foreign Proceeding. | ) |

**DECLARATION OF RACHELLE FRISBY PURSUANT TO 28 U.S.C. § 1746
AND STATEMENTS AND LISTS REQUIRED BY BANKRUPTCY RULE 1007(A)(4)**

I, Rachelle Frisby, declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1. I am an individual over 21 years of age and am competent to testify and to provide this declaration (the "Declaration") in support of (i) the Verified Petition for Recognition of Foreign Proceeding under Chapter 15 (the "Verified Petition")[2] [ECF No. 2] and the memorandum in support thereof and for related relief (the "Memorandum") [ECF No. 3], which seek entry of an order recognizing provisional liquidation proceedings with respect to PB Investment Holdings Ltd. ("Debtor" or "PBIHL") currently pending before the Supreme Court of Bermuda (the "Bermuda Court"), Companies (Winding Up) Commercial Court, 2020: No. 441 (the "Bermuda Proceeding") as a foreign main proceeding pursuant to sections 1515, 1517 and 1520 of title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532 (the "Bankruptcy Code"),[3] both of which were filed concurrently herewith and to which this Court is respectfully referred. John Johnston

---

[1] PBIHL (defined herein), a foreign Debtor, is a Bermuda limited company with a registered address in Bermuda of 22 Victoria Street, Hamilton, HM 12, Bermuda.
[2] Except as otherwise indicated, capitalized terms used herein carry the meanings ascribed to them in the Verified Petition.
[3] Except as otherwise indicated, section and chapter references are to the United States Bankruptcy Code.

1

and I (together, the "Petitioners" or the "JPLs"), have been appointed Joint Provisional Liquidators of the Debtor.

2. I make this Declaration on the basis of documentation in my possession or supplied to me and on facts and matters that are known to me or of which I have been informed by others. Where I have been informed by others, the information is true to the best of my knowledge and belief.

3. I am a Partner of Deloitte Ltd ("Deloitte"). I am qualified to act as a Joint Liquidator of a Bermuda company. I am the head of Financial Advisory in Bermuda and the British Virgin Islands, providing restructuring, forensic and dispute, business valuation, M&A transaction, and AML compliance services. I have over 20 years of experience working in public accounting in Canada and Bermuda.

4. The facts and matters contained in this Declaration are based on my own understanding gained through my review of the books and records provided to me by the Bermuda Monetary Authority in relation to Northstar Financial Services (Bermuda) Ltd. ("Northstar") together with knowledge gained in preparation for my role as one of the JPLs to include a company search at the Registrar of Companies in Bermuda, and since my appointment as one of the JPLs of the Debtor.

**I. Background**

5. Debtor was incorporated on November 28, 2014 as an exempted company pursuant to the Bermuda Companies Act 1981 with registration number 49773. The Debtor was formerly known as Beechwood Bermuda Investment Holdings Ltd ("Beechwood") and changed its name to PB Investment Holdings Ltd.

6. PBIHL provides wealth management services to financial institutions and high net worth individuals offering a range of investment plans. PBIHL has not received a license from the Bermuda Monetary Authority to operate such activities.

7. PBIHL and Northstar are both wholly owned subsidiaries of BMX Bermuda Holdings Ltd. which is wholly owned by BMX Holdings LLC with the ultimate beneficial owner being Mr. Greg E. Lindberg ("Mr. Lindberg").

8. Following the appointment of the JPLs for Northstar and in the course of administering the provisional liquidation of Northstar and reviewing its financial records, the JPLs became aware that Northstar had been paying PBIHL's day-to-day expenses and operating costs since on or about November 30, 2018. Northstar's payment of PBIHL's day-to-day expenses and operating costs was made pursuant to a loan agreement between the two entities (the "Loan Agreement").[4] The Chief Compliance Officer of Northstar confirmed that the arrangement was for all invoices to be sent to Northstar to track Bermuda related payments and the intercompany balance was to be repaid to Northstar by PBIHL.

9. On October 19, 2020, the JPLs acting on behalf of Northstar, through their Bermuda Counsel, Marshall Diel & Myers Limited ("MDM"), served PBIHL a statutory demand pursuant to Section 162(a) of the Bermuda Companies Act 1981. The statutory demand required PBIHL to pay the sum of BD$357,494.38 within twenty-one (21) days of the date of the service (the "Statutory Demand") and specified that the sum of BD$357,494.38 was due and owing pursuant to the Loan Agreement for the period up to and including December 31, 2019 (the "2019 Loan Amount"). The Statutory Demand was clear that this sum did not include any monies due and

---

[4] The JPLs do not believe that there is a formal document evidencing the Loan Agreement.

04/02/2021 SL1 1679429v2 115179.00001

owing to Northstar for the period January 1, 2020 to present and, accordingly, the total amount due and owing to Northstar may in fact be greater.

10. After the issuance of the Statutory Demand, following further review by the JPLs and their colleagues at Deloitte, the JPLs became aware of additional loans made by Northstar to PBIHL in 2020 pursuant to the Loan Agreement. Specifically, for the period January 2020 to September 2020, Northstar made additional payments on PBIHL's behalf in the total sum of BD$7,194.57

11. Accordingly, the total known sum due and owing by PBIHL to Northstar is BD$364,688.95, subject to further investigation by the JPLs.

12. There are a number of transactions that relate to an entity known as Private Bankers Investment Company ("PBIC") paid by Northstar and allocated to PBIHL. The JPLs understand that PBIC was a related company that was not fully operational and certain sunk costs were absorbed by Northstar. These expenses were later apportioned between PBIHL, Omnia Ltd. and Northstar based on the assets under management of the respective entities, with PBIHL's share of the PBIC expenses totaling $33,833.98.

13. The twenty-one day period for PBIHL to pay the 2019 Loan Amount to Northstar pursuant to the Statutory Demand expired on November 9, 2020 and to date there has been no formal response by PBIHL (or any other person) to the Statutory Demand and no payments have been made by PBIHL (or by any other person) in respect of any of these debts owed by PBIHL to Northstar in response to the Statutory Demand or otherwise.

14. In light of these circumstances, the JPLs believe PBIHL is unable to pay its debts as they fall due and consequently sought entry of the Bermuda Order.

15. Mr. Lindberg is the ultimate beneficial owner of four related entities: (i) the Debtor; (ii) Northstar; (iii) Omnia Ltd. ("Omnia"); and (iv) PB Life and Annuity Co., Ltd. ("PBLA", together with Omnia and Northstar the "Related Debtors").[5]

16. PBIHL, PBLA and Omnia were acquired by Mr. Lindberg in 2017 and Northstar in 2018.

17. PBLA's principal assets are located in this District. These assets consist of hundreds of millions of dollars in investments held in two trust accounts at The Bank of New York Mellon. Debtor is an affiliate of PBLA through their common owner, Mr. Lindberg, and, pursuant to 28 U.S.C. §1408(2) and 1410(3), venue is proper in this District.

18. PBLA and Omnia are both owned 100% by PBX Bermuda Holdings, Ltd. PBX Bermuda Holdings, Ltd. is in turn owned 100% by PBX Holdings, LLC. Mr. Lindberg holds a 100% ownership interest in PBX Holdings, LLC.

19. Ultimately, Mr. Lindberg owns and controls PBLA, Omnia, Northstar and Debtor, so that the Debtor and Related Debtors are affiliates as defined under section 101(2) of the Bankruptcy Code. Debtor files this Chapter 15 petition in this District as related to PBLA pursuant to 28 U.S.C. §§ 1408(2) and 1410(3).

20. On or about October 3, 2018, the Bermuda Monetary Authority was notified that the United States Department of Justice had launched an investigation into Mr. Lindberg. On March 18, 2019, Mr. Lindberg was indicted on charges of attempting to bribe the North Carolina Department of Insurance Commissioner.

---

[5] Omnia, Northstar and PBLA filed petitions under Chapter 15 of the Bankruptcy Code and their cases are being jointly administered under *In re PB Life and Annuity Co., Ltd.*, Case No. 20-12791 (Bankr. SDNY).

04/02/2021 SL1 1679429v2 115179.00001

21. Mr. Lindberg was tried in February 2020 and on March 5, 2020, a federal jury convicted Mr. Lindberg of conspiracy to commit honest services wire fraud and bribery concerning programs receiving federal funds.

22. Northstar and now PBIHL have had non-compliance and liquidity issues. Shortly after the change of control of Northstar to Mr. Lindberg, there was a reallocation of assets of Northstar, Omnia and PBLA, with significant assets being invested in equity and debt instruments, mainly in special purpose vehicle structures, under the control of Mr. Lindberg in the United States, which now appear to be illiquid. The JPLs require relief from this Court to assist in maximizing the value of these assets of the Debtor, Northstar, Omnia and PBLA, most of which are invested in multiple companies organized under the laws of the United States, including over $500 million invested in Lindberg affiliates.

23. The Debtor was a defendant in an action styled as *Melanie Cyganowski, as Receiver for Platinum Partners Credit Opportunities Master Fund LP, et al. v. Beechwood Re Ltd.*, No. 18-cv-12018-JSR (S.D.N.Y.), which was thereafter consolidated with two other actions under the caption *In re Platinum-Beechwood Litigation*, No. 18-cv-6658-JSR (S.D.N.Y.). On April 15, 2020, the District Court entered a Decision and Order granting the Debtor summary judgment and dismissing each of these actions. Plaintiff filed Notices of Appeal with the Second Circuit Court of Appeals, and assigned index numbers 20-3048 and 20-3100. The parties have reached an agreement to settle this litigation, subject to documentation and approval by the Bermuda Court, and the Appellant has withdrawn with prejudice both appeals.

24. The stay of creditor actions to be sought in this case would only apply to the Debtor and in no way would stay creditor actions against BMX Holdings, LLC, BMX Bermuda

Holdings, Ltd., Mr. Lindberg, Global Growth or any non-debtor entity potentially affiliated with the Debtor.

25. The JPLs believe the Debtor is cashflow insolvent and believe in all likelihood the Debtor is balance sheet insolvent.

26. As stated, *supra*, on March 18, 2019, Mr. Lindberg was indicted on charges of attempting to bribe the North Carolina Department of Insurance Commissioner. Mr. Lindberg was tried in February 2020 and on March 5, 2020, a federal jury convicted Mr. Lindberg of conspiracy to commit honest services wire fraud and bribery concerning programs receiving federal funds and he was later sentenced to serve over seven years in prison. Mr. Lindberg was incarcerated on October 20, 2020.

27. In an official release following Mr. Lindberg's indictment, Assistant Attorney General Benczowski commented that "[t]he indictment unsealed today outlines a brazen bribery scheme in which Greg E. Lindberg and his coconspirators allegedly offered hundreds of thousands of dollars in campaign contributions in exchange for official action that would benefit Lindberg's business interests. . . Bribery of public officials at any level of government undermines confidence in our political system. The Criminal Division will use all the tools at our disposal—including the assistance of law-abiding public officials—to relentlessly investigate and prosecute corruption wherever we find it." *See* Department of Justice Office of Public Affairs release.[6]

28. On April 15, 2019, due to the complications arising out of Mr. Lindberg's indictment, the Bermuda Monetary Authority imposed significant conditions on the insurance license of each of Northstar, Omnia and PBLA to assist in the enhanced supervision by the

---

[6] https://www.justice.gov/opa/pr/founder-and-chairman-multinational-investment-company-company-consultant-and-two-north

Bermuda Monetary Authority. The conditions require that Northstar, Omnia and PBLA seek the written approval of the Bermuda Monetary Authority before engaging in certain actions.

29. In March 2020, following the conviction of Mr. Lindberg, the Bermuda Monetary Authority received an increasing number of complaints from Northstar's policyholders regarding unpaid surrender requests and were advised of a legal action commenced against PBLA in the United States. The Bermuda Monetary Authority was increasingly concerned about the solvency of Northstar, Omnia and PBLA. In May 2020, the Bermuda Monetary Authority appointed Deloitte as an independent party to conduct a review of the files held by the Bermuda Monetary Authority in relation to each of the Related Debtors' non-compliance and solvency issues and to report to the Bermuda Monetary Authority on the nature and state of the financial position of the Related Debtors.

30. Deloitte provided its report, detailing the probable solvency issues of Northstar, Omnia and PBLA and, on September 18, 2020, the Bermuda Monetary Authority filed a Petition on behalf of the Debtors seeking, among other things, the winding up of the Debtor and appointment of the JPLs.

31. Upon further investigation as outlined, *supra*, the JPLs of Northstar filed an application to be appointed as the JPLs of PBIHL on December 3, 2020, which application was granted on January 8, 2021.

32. The Bermuda Court has granted the JPLs' request to appoint provisional liquidators and, by order dated January 8, 2021 (the "Bermuda Order"), Petitioners were appointed as JPLs and duly authorized foreign representatives of the Debtor. On September 25, 2020, the Bermuda Court previously appointed the Petitioners as JPLs and duly authorized foreign representatives over three related entities, Northstar, Omnia and PBLA for which the Petitioners sought chapter

8

15 relief, granted by this Court on January 5, 2021. As set forth in greater detail below, the JPLs need relief from this Court, *inter alia*, to (1) assist in the administration of hundreds of millions of dollars of assets of the Related Debtors and tens of millions of dollars of assets of PBIHL that the former principal of all four companies caused to be channeled into illiquid investments issued by his affiliates as well as other United States-based companies, and (2) obtain a stay of multiple litigations that would otherwise deplete scarce resources to the detriment of policyholders and other creditors of the Related Debtors. The Debtor has assets located in the United States. A true and correct copy of the Bermuda Order is attached hereto as <u>Exhibit A</u>.

33. Specifically, the Bermuda Order granted the JPLs the broad authority to undertake various actions with respect to the Debtor, including the authority to:

> 4.1 To continue the business of the [Debtor] under the supervision of [the Bermuda Court] so far as is necessary to preserve the value of the [Debtor];
>
> 4.2 To review, secure, take possession of and [sic] the books, papers, records, bank accounts and any other property or assets (of whatever nature) to which the [Debtor] is or appears to be entitled, and to take whatever steps necessary to effect such possession including, where necessary, Court actions to obtain such property or assets to bring them under the control of the JPLs. For the avoidance of doubt, this includes the power for the JPLs to be able to see, review, secure, take possession of and copy any books and records (of whatever nature) relating to the [Debtor's] management, accounts and audit located in the offices of the [Debtor's] Managers, Principal Representative and/or auditors and accountant both in [Bermuda] and in any other jurisdiction;
>
> 4.3 To retain and employ barristers, attorneys and/or such agents or professional persons as the JPLs deem fit (in Bermuda, the United States, and elsewhere as the JPLs deem appropriate) for the purpose of advising and assisting in the execution of their powers;
>
> 4.4. To render and pay invoices out of the assets of the [Debtor] for their own remuneration at their usual and customary rates (and this shall include all costs, charges and expenses of their attorneys and all other agents, managers, accountants or other persons that the JPLs may employ); and all expenses and disbursements in connection with the running, administration and management of the [Debtor's] records and affairs and offices;

4.5 If deemed necessary and/or appropriate to seek the assistance of the courts in the United States or elsewhere as deemed necessary and appropriate to secure the assets of the [Debtor] in that jurisdiction, including, without limiting the foregoing, the assistance of the United States Bankruptcy Court under the provisions of the US Bankruptcy Code, Chapter 15;

4.6 To take control of and operate the existing bank accounts of the [Debtor] in Bermuda, the United States, or elsewhere, and no other person or entity shall have any authority, power or control over any of the [Debtor's] accounts, including without limitation the [Debtor's] officers, directors, shareholders, affiliates or agents; and to open and operate any bank accounts in the name of the JPLs or the [Debtor] as may be necessary; which powers, for the avoidance of doubt, shall include the ability to amend the list of authorized signatories for the operation of any such bank accounts;

4.7 To do all such things as may be necessary or expedient for the protection of the [Debtor's] property or assets, including but not limited to selling or otherwise disposing of the property of the [Debtor] by any means appropriate;

4.8 To conduct such investigations and obtain such information so far as it is necessary to locate, protect, secure, take possession of, collect and get in the assets, and determine the liabilities, of the [Debtor], including but not limited to securing the shares in and controlling the subsidiaries of the [Debtor];

4.9 To investigate the assets and affairs of the [Debtor] and the circumstances which gave rise to its insolvency, including, without limitation, to require the [Debtor] to make a forensic image of the [Debtor's] and its subsidiaries' management information systems including records stores [sic] on their computers. Such forensic image is to be stored on behalf of the [Debtor] and appropriately safeguarded to protect the integrity of the data (including all metadata) and shall only be accessed with the written consent of the JPLs or as directed by [the Bermuda Court]. For the avoidance of doubt, the books, records and documents of the [Debtor] include:

    4.9.1 Emails exchanged and other correspondence between the [Debtor] and its auditors, and the [Debtor] and other third parties; and

    4.9.2. Documents and information provided by the [Debtor] to its auditors and provided by the auditors to the [Debtor] in relation to the audit work;

. . .

4.12. To carry out the following where deemed appropriate:

    4.12.1. The payment of payroll, payroll taxes, employment benefits and expenses;

      4.12.2. The employment of professionals used in the ordinary course of business;

      4.12.3. The incurrence of indebtedness or borrowed money, whether pursuant to agreements with suppliers or pursuant to loan arrangements with financing institutions and/or to grant security in respect of same and/or to guarantee such indebtedness or borrowed money of affiliates;

      4.12.4. The sale or other disposition of any business operation, subsidiary, division or other significant asset of the [Debtor];

      4.12.5. The transfer, novation or commutation of any contracts of insurance or reinsurance to which the [Debtor] is party;

      4.13. To enter into settlements or arrangements with any creditors and any debtors of the [Debtor] without further order or other approval or formality, including but not limited to, terminating, completing or effecting any contracts or transactions relating to the business of the [Debtor];

. . .

      4.15. To consider any legal or arbitration proceedings (including winding up proceedings) wherever situate in which the [Debtor] is a party; and to give all instructions in connection therewith and take such action as may be thought necessary to continue to prosecute or defend such proceedings or to apply for a stay of such proceedings;

      4.16 To consider and if thought advisable to commence such actions as may be necessary in Bermuda or elsewhere to protect, recover or obtain assets or money belonging to the [Debtor];

. . .

Bermuda Order, ¶¶ 4.1-4.9, 4.12, 4.13, 4.15 and 4.16.

      34. After our appointment, the JPLs conducted a review of the books and records of Northstar and found that Northstar paid the day to day expenses and operating costs of the Debtor pursuant to the Loan Agreement and, through Bermuda Counsel, sent a statutory demand letter to PBIHL requiring the repayment of the funds.

      35. Based on the documentation the JPLs reviewed, BMX Holdings, LLC, a North Carolina limited liability company, wholly owns BMX Bermuda Holdings, Ltd., the Debtor's parent company, and the Debtor holds loans, debt instruments and preferred equity, invested in

privately held, special purpose vehicles ("SPVs") located in the United States and controlled by Mr. Lindberg. Mr. Lindberg is the 100% owner of BMX Holdings, LLC's equity.

36. As a result of Mr. Lindberg's criminal conviction, the JPLs are concerned the Debtor's assets will be dissipated or otherwise wasted either by Mr. Lindberg or one of the myriad of the entities under Mr. Lindberg's control. Thus, part and parcel with the Court's grant of recognition of the Bermuda Proceeding, the JPLs are requesting turnover and control of the Debtor's United States-based assets so the JPLs can administer the assets in accordance with the Bermuda Order, including but not limited to distribution in the Bermuda Proceeding. *See* Bermuda Order, ¶ 4.2.

37. On the date hereof (the "Petition Date"), the JPLs commenced the case (the "Chapter 15 Case") by filing the Verified Petition for relief under Chapter 15 of the Bankruptcy Code. The JPLs seek recognition of the Bermuda Proceeding as a foreign main proceeding or, in the alternative, as a foreign nonmain proceeding under section 1517 of the Bankruptcy Code.

## II. The JPLs are Foreign Representatives of the Debtor

53. John Johnston and I have been informed by our legal advisors that a Chapter 15 proceeding is commenced by the filing of a petition for recognition (and related documents) by the "foreign representative." We are further informed that a bankruptcy court may presume that the person petitioning for Chapter 15 recognition is a foreign representative if the decision or certificate from the foreign court so indicates. We understand that "foreign representative" is defined in section 101(24) of the Bankruptcy Code to mean:

> "…a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding." 11 U.S.C. § 101(24).

54. John Johnston and I have been appointed by the Bermuda Court on a provisional basis to administer the Debtor's affairs, and we have been authorized by the order appointing us to (among other matters) seek recognition under Chapter 15 of the United States Bankruptcy Code. Specifically, we have been authorized by the Bermuda Order to seek the assistance of the courts in the various jurisdictions where assets are located to secure the Debtor's assets in that jurisdiction. Bermuda Order ¶4.5.

55. Additionally, we are individuals appointed by the Bermuda Court to exercise certain administrative powers, including, among other things, to continue the operations of the Debtor in so far as is necessary to preserve the value of the Debtor, to prove rank, claim and or receive dividends in the bankruptcy or insolvency of any debtor, to make payments to creditors, to discharge costs, expenses and debts incurred by the Debtor, and to do all other things incidental to the exercise of our powers. Bermuda Order ¶4.

56. In light of the statutory presumption, the Bankruptcy Code's definition of "foreign representative" and the express provisions of the Bermuda Order, I believe that John Johnston and I are foreign representatives of the Debtor.

### III. The Bermuda Proceeding Is A Foreign Main Proceeding

57. I believe that the Bermuda Proceeding is a "foreign main proceeding" within the meaning of Section 1502(4) of the Bankruptcy Code.

58. John Johnston and I have been informed by our legal advisors that "foreign proceeding" is defined in section 101(23) of the Bankruptcy Code to mean:

> "... a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the Debtors are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation" 11 U.S.C. § 101(23).

59. I believe that the Bermuda Proceeding falls within the foregoing definition. The provisional liquidation proceeding is a collective judicial proceeding, in Bermuda, governed by Bermuda statute applicable to corporate insolvencies. In the provisional liquidation proceeding the Debtor's assets and affairs are subject to the control or supervision of the Bermuda Court. The purpose of the provisional liquidation proceeding is reorganization or, should the reorganization fail, liquidation.

60. John Johnston and I have been informed by our legal advisors that Section 1517(b)(1) of the Bankruptcy Code provides that a foreign proceeding shall be recognized as a "foreign main proceeding" if the foreign proceeding is pending in the country where the debtor has "the center of its main interests" ("COMI"). COMI is not defined in Chapter 15, but Section 1516(c) of the Bankruptcy Code provides that "[i]n the absence of evidence to the contrary, the debtor's registered office, or habitual residence in the case of an individual, is presumed to be the center of the debtor's main interests."

61. We believe that, based on its place of registered office, the COMI of Debtor is Bermuda.

62. Additional factors supporting COMI in Bermuda for the Debtor include the location in Bermuda of Debtor's board of directors and officers; location in Bermuda of Debtor's operations, books and records and certain assets; and location in Bermuda of certain of Debtor's bank accounts.

**IV.  Alternatively, the Bermuda Proceeding Is a Foreign Nonmain Proceeding**

63. In the event that the Court concludes that the Debtor's COMI is not Bermuda, the JPLs believe that the Court should recognize the Bermuda Proceeding as a foreign nonmain proceeding. The JPLs are informed by their legal advisors that a foreign nonmain proceeding

04/02/2021 SL1 1679429v2 115179.00001

takes place in a jurisdiction that is not the entity's center of main interests but where it has an "establishment," defined as "any place of operations where the debtor carries out a nontransitory economic activity." 11 U.S.C. §§ 1502(2), (5).

64. As of the date of the filing of the Chapter 15 petition the Debtor had a place of business in Bermuda. Thus, it is evident the Debtor has an establishment in Bermuda.

65. Besides the Petitioners, who report to and are supervised by the Bermuda Court, the Debtor has no foreign administrators and there are no other insolvency proceedings regarding the Debtor anywhere in the world.

## STATEMENT PURSUANT TO
## SECTION 1515(c) OF THE BANKRUPTCY CODE

66. I am informed that section 1515(c) of the Bankruptcy Code provides that "[a] petition for recognition shall also be accompanied by a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative."

67. In compliance with section 1515(c) of the Bankruptcy Code, I hereby declare that the only foreign proceedings (as such term is defined in section 101(23) of the Bankruptcy Code) pending with respect to the Debtor that are known to me is the Bermuda Proceeding.

## STATEMENTS AND LISTS PURSUANT TO
## BANKRUPTCY RULE 1007(a)(4)

68. I am informed that Bankruptcy Rule 1007(a)(4) provides as follows:

In addition to the documents required under § 1515 of the Code, a foreign representative filing a petition for recognition under chapter 15 shall file with the petition: (A) a corporate ownership statement containing the information described in Rule 7007.1; and (B) unless the court orders otherwise, a list containing the names and addresses of all persons or bodies authorized to administer foreign proceedings of the debtor, all parties to litigation pending in the United States in which the debtor is a party at the time of the filing of the petition, and all entities against whom provisional relief is being sought under § 1519 of the Code.

69. In compliance with Bankruptcy Rule 1007(a)(4), I hereby provide the following lists:

15

Corporate Ownership Statement

70. Pursuant to Bankruptcy Rule 7007.1, the following entities directly or indirectly own the following percentages of Debtor's equity interests: Greg E. Lindberg, individually, owns 100% of BMX Holdings LLC, which owns 100% of BMX Bermuda Holdings, Ltd which owns 100% of PB Investment Holdings Ltd.

JPLs in Bermuda Proceeding

71. As noted above, John Johnston and I were appointed JPLs in the Bermuda Proceeding by Order dated January 8, 2021. Our address is Deloitte Ltd., Corner House, 20 Parliament Street, Hamilton HM 12 Bermuda.

Parties to Litigation in the United States

72. As of the date of this Declaration, Debtor was a defendant in an action styled as *Melanie Cyganowski, as Receiver for Platinum Partners Credit Opportunities Master Fund LP, et al. v. Beechwood Re Ltd.*, No. 18-cv-12018-JSR (S.D.N.Y.), which was thereafter consolidated with two other actions under the caption *In re Platinum-Beechwood Litigation*, No. 18-cv-6658-JSR (S.D.N.Y.), described *supra*.

Entities Against Whom Provisional Relief is Sought under Section 1519

73. The JPLs are not seeking provisional relief under Bankruptcy Code Section 1519.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:   April 1, 2021
         Hamilton, Bermuda

_____
Rachelle Frisby – Joint Provisional Liquidator